**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:24-cv-03512-CNS-STV

KRISTEN CROOKSHANKS, as parent and next of friend of a minor on behalf of C.C.;
MINDY SMITH, as parent and next of friend of a minor on behalf of E.S.;
NAACP–COLORADO–MONTANA–WYOMING STATE AREA CONFERENCES; and
THE AUTHORS GUILD,

    Plaintiffs,

v.

ELIZABETH SCHOOL DISTRICT,

    Defendant.

**Defendant's Motion for Administrative
Stay and Stay Pending Appeal**

Defendant Elizabeth School District (the District) moves to stay the Court's order granting a preliminary injunction (ECF No. 35), pending appeal. The District also moves for an administrative stay of the preliminary injunction pending disposition of this motion, extending to at least 48 hours after the Court decides the motion.

\* \* \*

*I froze as he pushed inside. There it is. Oh, God. There it goes. It went, all right, with an audible tear. Pain mushroomed into agony and all I could do was go stiff.*

**Crank, Ellen Hopkins**

*Confused at his tears, and at the sticky stuff icing her hands, still Kaeleigh pleaded, "Don't cry, Daddy. What's the matter? Didn't I love you good enough?"*

**Identical, Ellen Hopkins**

*Removing himself from her was so painful to him he cut it short and snatched his genitals out of the dry harbor of her vagina.*

**The Bluest Eye, Toni Morrison**

The District's School Board decided that books with material like that quoted above lack educational value and should not be in the District's libraries. If parents disagree, they may access the content for their children through myriad other sources, including public libraries, online libraries, Amazon, or adult bookstores. But, to the Board, books with this type of vulgar and age-inappropriate content should not be in school libraries.

The Court has held—without an evidentiary hearing—that the only explanation for the District's decision to remove this material from its school libraries is partisan motivation to further the "conservative values" of the elected School Board. And, on this basis, the Court has determined that the First Amendment requires extraordinary relief, compelling the District to repurchase the books, including those containing the passages quoted above, and to place them on school library shelves. This, even though the Plaintiffs already have access to the 18 titles at issue and waited over three months after

the Board's removal decision to bring suit. Even more, the Court, through its preliminary injunction, has made itself the last word on the constitutional bona fides of any *future* decision by the District to remove material like that quoted above from its school libraries.

The School Board exercised its discretion to remove the at-issue titles after a thorough and transparent discussion with the community, parents, the superintendent, and the chief academic officer. The decision was unanimous and enjoys broad support. Considering the extraordinary relief the Court has granted, and the first-impression legal issues in this case, the District asks the Court to stay its preliminary injunction pending appeal to the Tenth Circuit. A stay pending appeal is appropriate given that harm to Plaintiffs from staying the Court's order is nonexistent: they have had access to the at-issue titles since January 2025, and will retain that access throughout this litigation.

## CONFERRAL STATEMENT

Plaintiffs oppose the relief requested in this motion.

## BACKGROUND

On September 9, 2024, the District removed 18 titles[1] from its library collection after the School Board voted that they were inappropriate for students. (Snowberger Decl., ¶¶ 18–19, ECF No. 25-1.) The at-issue titles contain, among other things, graphic violence, graphic sexual content, and extreme drug and alcohol use. (*See id.*; Olsen Decl., ¶¶ 12, 28, 31, ECF No. 25-3; Powell Decl., ¶¶ 12, 31–37, ECF No. 25-4; Waller Decl., ¶¶ 9, 23, 25, ECF No. 25-5; Calahan Decl., ¶¶ 10, 24, 26, ECF No. 25-6.) The

---

[1] Initially, 19 titles were identified for potential removal, but one of those titles was not available for community review and thus was not included in the School Board's September 9, 2024 removal vote. (*See* ECF No. 25-12 at 6 (Sept. 9, 2024 Meeting Minutes) (voting to "permanently remove the 18 books that were temporarily displayed at the district office"); ECF No. 25-19 at 1 (Superintendent communication listing the 18 titles temporarily displayed for community review and potential removal and noting that *Speak* was originally on the list but was not presently available).)

2

Board determined that the titles were of little educational value for children and should be pulled from school library shelves. Weeks after the Board's vote, Superintendent Snowberger disposed of the physical books in the District's possession bearing the at-issue titles.[2] (Snowberger Decl. (March 21, 2025), ¶¶ 5–7.)

Months later, on December 19, 2024, the NAACP, The Authors Guild, and two students filed suit, alleging that removal of the books violated their rights under the First Amendment and the Colorado Constitution because the District's motivations for removing them were unconstitutional. (*See* Compl., ECF No. 1.) The next day, on December 20, Plaintiffs moved for a preliminary injunction ordering the books be put back on the shelves. Plaintiffs' request was accompanied by eighteen exhibits purporting to demonstrate the School Board's improper motives. (*See* ECF Nos. 9-1–9-18.) The District responded with declarations from each Board member explaining their actual motives, moving to exclude the Plaintiffs' evidence, and requesting an evidentiary hearing to resolve the factual disputes underlying the motion for a preliminary injunction. (*See* Def's Opp'n, ECF No. 25; Def's Mot to Exclude, ECF No. 27.) The parties then filed a joint request for a status conference to schedule the evidentiary hearing and discuss the scope of the hearing. (Joint Mot. for Status Conf., ECF No. 34.)

On March 19, 2025, the Court granted a broad preliminary injunction without an evidentiary hearing. (Order, ECF No. 35.) The Court relied on Plaintiffs' contested evidence to hold that Plaintiffs were likely to succeed on the merits of their underlying

---

[2] After this lawsuit commenced, a donor donated to the District copies of the at-issue titles under the condition that (1) they be made available only to the two Student-Plaintiffs and to any student in the District who is either a member of Plaintiff NAACP or who has a parent or guardian who is a member of Plaintiff NAACP, and (2) they not be placed on the District's library shelves. (Snowberger Decl. (March 21, 2025), ¶ 11.) The donated books have been placed in the District libraries from which the 18 titles had been removed, and they are available to the above-identified students upon request. (*Id.* ¶ 12.)

3

claim. Based on that holding, it issued a preliminary injunction giving the Board six days to "return" every book it had removed "to their respective libraries." (*Id.* at 45.) It also broadly prohibits the Board from removing any additional books for the reasons the Court found problematic, which effectively creates a cloud of constitutional doubt over every future book-removal decision by the Board or the District's librarians.

## LEGAL STANDARD

In considering whether to grant a motion for a stay pending appeal, the Court must balance four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009); *United States v. Peck*, No. 23-4000, 2023 WL 3011416, at *1 (10th Cir. Apr. 17, 2023) (granting stay pending appeal). Additionally, the Court has the power to grant a temporary stay of its preliminary injunction pending a decision on this motion. Every court has the inherent power to "control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Carbajal v. Colorado Dep't of Corr.*, No. 22-CV-03062-PAB-KAS, 2025 WL 746918, at *1 (D. Colo. Feb. 25, 2025) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936)).

## ARGUMENT

The District acknowledges that the Court just granted a preliminary injunction to Plaintiffs based on a similar standard. In seeking a stay, the District is not arguing that the Court should reconsider its previous order; it is asking the Court only to recognize that there is a substantial likelihood that the Tenth Circuit may disagree with the Court's view of the case. The considerations attending a short-term stay pending appeal differ from those relevant to a preliminary injunction. *See Mohammed v. Reno*, 309 F.3d 95, 101 n.6

4

(2d Cir. 2002) ("a preliminary injunction will last until the end of the trial, often a considerable length of time after issuance, whereas a stay pending appeal, at least in the case of an expedited appeal, might last for a very brief interval").

I.     The District is Likely to Succeed on Appeal

     A.     **The Court granted the preliminary injunction by resolving contested fact issues with inadmissible evidence without an evidentiary hearing**

"[M]ost courts hold that when the written evidence reveals a factual dispute, an evidentiary hearing must be provided[.]" Wright & Miller, *Federal Practice & Procedure*, § 2949 Procedure on Application for Preliminary Injunction (3d ed.). To prevail on their motion for a preliminary injunction, Plaintiffs had to at least show that the five-member School Board exercised its discretion—as a body—in a narrowly partisan or political manner such that its subjective motivation was unconstitutional. (*See* Pls.' Mot. for Prelim. Injunc. 17, ECF No. 9 (citing *Pico* and stating "the plurality gleaned the rule that school boards cannot constitutionally exercise their discretion to determine the content of school libraries 'in a narrowly partisan or political manner'").) The constitutional standard advanced by Plaintiffs is inherently fact based, and the Court acknowledged the District's motivation for removing the books is in dispute. (Order 12, ECF No. 35.)

Thus, in addition to rejecting the District's arguments challenging the applicability of the *Pico* plurality standard (*see* Def.'s Opp'n 12–24, ECF No. 25), the Court had to find that "narrow[] partisan or political" motive was the "decisive factor" in the School Board's decision to remove the 18 at-issue titles.

All members of the School Board that voted on the removal decision submitted declarations opposing Plaintiffs' motion and disputing they were individually, or collectively, motivated by partisan or political motive. (Olsen Decl., ¶¶ 12–31, 33–34, ECF No. 25-3; Powell Decl., ¶¶ 12–38, ECF No. 25-4; Waller Decl., ¶¶ 9–27, ECF No. 25-5; Calahan Decl., ¶¶ 10–27, ECF No. 25-6; *see also* Booth Decl., ¶¶ 9–26, ECF No. 25-7

5

(explaining why she agreed with the Board's removal decision).) Each declaration stated in detail the Board member's respective motivation, which was informed by a variety of factors, including the problematic nature of the at-issue titles' content (graphic violence, excessive obscenity, explicit descriptions of sexual acts, troubling portrayals of suicide attempts and school shootings), inappropriateness for the age groups that could access the books, lack of sufficient educational value and lack of connection to a public-school curriculum, and parental opposition to the continued inclusion of the books in the District's libraries. (*See, e.g.*, Olsen Decl., ¶¶ 27–31, ECF No. 25-3.)

Nonetheless, without a hearing, the Court determined the decisive factor in the Board's removal decision was "blatantly unconstitutional" based on statements from three Board members in five out-of-context emails.[3] (Order 25–28.) In so doing, the Court elevated statements by a Board member who did not vote on the final removal decision (ECF No. 25-12 at 6 (Sept. 9, 2024 Meeting Minutes)), and an email about a book the Board has never voted to remove (*compare id.* (voting to remove 18 titles under consideration); ECF No. 25-19 at 1 (listing titles under consideration), *with* ECF No. 9-16 (Olsen email regarding *Redwood and Ponytail*), *and* Olsen Decl., ¶¶ 32, 36, ECF No. 25-3)), over each School Board member's specific explanation for his or her vote. The Court also assumed that any Board member's reference to "conservative values" doubled as an admission of a partisan or political motive (Order 29–30, 33), rather than an expression of a commitment to honoring parental rights, protecting students from exposure to

---

[3] Only two of those emails mention any of the 18 at-issue titles, and even then, the discussion addressed just two titles. (*See* ECF Nos. 9-12 & 9-14.) Further, and contrary to the Court's finding that Defendant's objections to the admissibility of these emails as hearsay were "meritless," the emails are hearsay (in fact, hearsay within hearsay) until Plaintiffs establish the predicates in Fed. R. Evid. 801(d)(2)(D). An evidentiary hearing would have permitted Plaintiffs and Defendant to explore the context of these emails with their apparent authors and recipients.

inappropriate content, and ensuring that library content furthers the District's educational mission. At the very least, the Court should have heard testimony from the Board members, weighed the competing evidence, and made credibility determinations before reaching a conclusion about the Board's motives. Instead, the Court discounted the statements in the Board members' declarations as "after-the-fact" and "prepared with counsel's advice." (Order 30.) This presents a fairness problem. It is prejudicial to make a fact-based determination, such as the Board's motive, without the benefit of a hearing, while at the same time refusing the District's competing evidence because it was prepared in defense of the motion for preliminary injunction.

### B. The District's removal of books is government speech

"A government entity has the right to 'speak for itself.'" *Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 467 (2009) (quoting *Board of Regents of Univ. of Wis. System v. Southworth*, 529 U.S. 217, 229 (2000)). Just as a person has a right to speak or not speak as they see fit, a government entity can choose what to say. And, just like a person, "[w]hen government speaks, it is not barred by the Free Speech Clause from determining the content of what it says." *Walker v. Tex. Div., Sons of Confederate Veterans, Inc.*, 576 U.S. 200, 207 (2015). Therefore, if the District's curation of its libraries constitutes government speech, the Plaintiffs cannot prevail on their book-removal claims.

The Supreme Court has held that "[a]n entity exercis[ing] editorial discretion in the selection and presentation of content is engage[d] in speech activity." *Moody v. NetChoice, LLC*, 603 U.S. 707, 731 (2024) (internal quotations omitted). This is true even when the content involved is the speech of another party: "Deciding on the third-party speech that will be included in or excluded from a compilation—and then organizing and presenting the included items—is expressive activity of its own. And that activity results in a distinctive expressive product." *Id.*

7

As the Court recognized, *Moody* provides "compelling" reason to believe that the District's removal of books is expression. (Order 18.) The District's editorial practices with respect to its libraries are expressive in the same way as social media or newspaper editorial practices. This is not because inclusion of books in a library conveys an express endorsement or sponsorship; a social media company does not explicitly endorse the content it puts in a user's feed. "Deciding on the third-party speech that will be included in or excluded from a compilation—and then organizing and presenting the included items—is expressive activity of its own." *Moody*, 603 at 731.

Under *Moody*, a private library's choice of books would constitute protected expression. There is a substantial likelihood that a higher court will hold that a government library's choice of books is government speech.

### C.  Even if government speech does not apply, the District prevails under *Hazelwood*

Even if the government-speech doctrine does not apply, the District's removal of books was a constitutional restriction of speech that might reasonably be perceived to bear the District's imprimatur. *Hazelwood School District v. Kuhlmeier*, 484 U.S. 260 (1988), sets the standard for restrictions of speech within "activities that might reasonably be perceived to bear the imprimatur of the school" and that "involve pedagogical concerns." *Fleming v. Jefferson Cnty. Sch. Dist. R-1*, 298 F.3d 918, 924 (10th Cir. 2002). A school may restrict speech under *Hazelwood* so long as the restrictions are "reasonably related to legitimate pedagogical concerns." *Pompeo v. Bd. of Regents of the Univ. of New Mexico*, 852 F.3d 973, 982 (10th Cir. 2017).  The universe of "legitimate pedagogical concerns" is large, including "the academic … discipline, courtesy, and respect for authority." *Fleming*, 298 F.3d at 925. Even the mere "desire to avoid controversy within a school environment" is enough to satisfy *Hazelwood*. *Id*. (collecting cases). This is a

8

lenient test, and courts will only step in to stop restrictions of *Hazelwood* speech if the restrictions have "no valid educational purpose." *Hazelwood*, 484 U.S. at 273. Nor should a court "second-guess the *pedagogical* wisdom or efficacy of an educator's goal." *Axson-Flynn*, 356 F.3d 1277, 1292 (10th Cir. 2004) (emphasis in original).

The Tenth Circuit has previously applied *Hazelwood* to a collection of third-party expression hosted by a school. In *Fleming*, the Tenth Circuit held that *Hazelwood* applied to works of art hung in a school that were painted by third parties who were not students and, in some cases, had no relationship to the school. *See* 298 F.3d at 921. The court held that *Hazelwood* controlled because "[t]he presence of permanently affixed tiles on the walls implicates the school's approval of those tiles. When coupled with organizing, supervising, approving the funding, and screening the tiles, the school's decision permanently to mount them on the walls conveys a level of approval of the message." *Id.* at 930. This is closely analogous to a school library: speech of third parties hosted in the school, funded by the school, and screened by the school.

The restrictions imposed by the District served a legitimate pedagogical interest and were constitutional under *Hazelwood*. The District acted to avoid exposing students to what it considered to be inappropriate or objectionable content, which is one of the "legitimate pedagogical concerns" identified in *Hazelwood* itself. Indeed, one of the conceptual foundations of *Hazelwood* was the Supreme Court's conclusion that schools needed control over school-sponsored speech to ensure students "are not exposed to material that may be inappropriate for their level of maturity." *Hazelwood*, 484 U.S. at 271.

**D.  Plaintiffs have no cause of action under the Colorado Constitution**

Article II, Section 10 of Colorado's Constitution does not contain an express right of action and there is no state statute creating one. *See Vanderhurst v. Colorado Mountain College Dist.*, 16 F. Supp. 2d 1297, 1304 (D. Colo. 1998); Colo. Const. Art. II, Section 10.

Plaintiffs are therefore asking this Court to recognize an implied cause of action to enforce the Freedom of Expression provisions in the Colorado Constitution.

In *Board of County Commissioners v. Sundheim*, the Colorado Supreme Court held that courts may imply such a cause of action only where there is "no other adequate remedy." 926 P.2d 545, 553 (Colo. 1996). *Sundheim* further held that a Section 1983 action under the federal constitution is an "adequate remedy" sufficient to foreclose the need for an implied cause of action. *See id.*

This holding forecloses the Plaintiffs' state constitutional claims. The Tenth Circuit has applied the rule of *Sundheim* to dismiss state law claims in precisely the situation presented by this case. Citing *Sundheim*, the Tenth Circuit held that a plaintiff may not bring an action under Article II, Section 10 of the Colorado Constitution if they can also bring a Section 1983 action for violation of the First Amendment. *Arndt v. Koby*, 309 F.3d 1247, 1255 (10th Cir. 2002). This disposes of Plaintiffs' state constitutional claims.

### E. The Author Plaintiffs have no First Amendment right to have their books in school libraries

The author Plaintiffs have no right to have their books in school libraries. First, the authors' claim is properly analyzed under the government-speech doctrine. Authors have no right to have the government purchase and stock their books. Such a right would amount to a right to government sponsorship of the authors' speech. Even assuming government speech does not apply, the author Plaintiffs' claim fails under *Hazelwood* because the books in the library bear the imprimatur of the school and were removed based on legitimate pedagogical concerns. While the authors argue that the library is a forum for speech, their position would destroy the library as we know it.

Taking the authors forum argument to its logical conclusion demonstrates the necessity of employing either *Hazelwood* or the government-speech doctrine. If a school

library is a nonpublic forum, the District is not permitted to exclude books for the views they espouse. *See Ark. Educ. Television Comm'n v. Forbes*, 523 U.S. 666, 682 (1998). Books of every stripe must be allowed in the library, no matter if they are unscientific, racist, sexist, or otherwise objectionable. This is not the way of libraries.

Authors have no right to have the government purchase, stock, and display their work. The curation of libraries is an act of expression and the authors are not entitled to the government's speech. The District does not offend the First Amendment when it removes inappropriate books from its library shelves. And even then, the relevant consideration is the rights of students, not the authors. Libraries are not fora where an author is entitled to the display of their work. They are reserved for the works judged proper for inclusion. The authors have no First Amendment rights at stake here.

## II.     The District will suffer irreparable harm in the absence of a stay

The District will suffer irreparable harm without a stay. The "irreparable harm requirement is met if a [party] demonstrates a significant risk that he or she will experience harm that cannot be compensated after the fact by monetary damages." *Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1258 (10th Cir. 2003) (quoting *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 484–85 (3d Cir.2000)). Irreparable harm can include "increased costs of compliance" and "alterations in operating procedures." *Career Colls. & Sch. of Tex. v. U.S. Dep't of Educ.*, 98 F.4th 220, 235 (5th Cir. 2024), *cert. granted in part*, No. 24-413, 2025 WL 65914 (U.S. Jan. 10, 2025). If the injunction goes into effect, the District will suffer irreparable harm in at least two respects, as outlined below.

### A.     Intrusion into future Board decisions regarding library collection

Under the Court's order, the District will be unable to curate its own library collection. The Court has ordered that "the District is enjoined from removing additional books because the District disagrees with the views expressed therein or merely to further

11

their preferred political or religious orthodoxy." (Order 45.) Given the Court's findings that the sworn declarations of District officials are "pretext" covering for an unconstitutional decision based on political or religious bigotry, this injunction is breathtakingly broad. Any decision to remove any book for any facially valid reason could be subject to second-guessing by the Court based on nothing more than a declaration from an aggrieved party who claims to know the motivations of the District's School Board members. Indeed, the Court's order appears to acknowledge the authority it is assuming when it refused to categorically approve the removal of books promoting holocaust denial. (*Id.* at 35 n.11.) What is age-appropriate for the District's children, and what is too sexually explicit for them, are necessarily political issues. It is for this reason that the U.S. Supreme Court has cautioned that "Courts do not and cannot intervene in the resolution of conflicts which arise in the daily operation of school systems, and which do not *directly and sharply implicate basic constitutional values*." *Epperson v. Arkansas*, 393 U.S. 97, 104 (1968) (emphasis added). This Court's injunction mandates precisely this sort of intervention in order to vindicate a constitutional right of suspect provenance. In effect, the Court is now the District's de-facto library superintendent. This will necessarily paralyze Board's statutory decision-making authority regarding its library collections. This harm is irreparable absent a stay pending appeal.

  **B.** **Mandatory actions required of the District**

The Court's preliminary injunction does not only require the District to refrain from certain actions, it mandates the District do two things: (1) repurchase and shelve copies of the 18 at-issue titles, and (2) adopt new interim library policies. The limited purpose of a preliminary injunction "is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). Preliminary injunctions requiring the nonmoving party to take such affirmative actions

before a trial on the merits are expressly disfavored. *See Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258–59 (10th Cir. 2005).

The District discarded its copies of the at-issue titles after the School Board's September 9, 2024 decision to remove them from the District's library collection. (Snowberger Decl. (March 21, 2025), ¶¶ 5–7.) If Plaintiffs or their attorneys had made a demand for the books' preservation pending litigation before that time, the District could have preserved them. (*Id.* ¶¶ 8–9.) But the first communication the District received regarding this lawsuit was Plaintiffs' complaint filed over three months after the Board's decision to remove these books from its libraries. (*Id.* ¶¶ 8, 10.) Though a private donor made arrangements for the Plaintiffs to have access to copies of the 18 titles during the pendency of this lawsuit, the District is unable to place these copies on the library shelves because these copies were donated on the condition that they be provided only to Plaintiffs in this lawsuit and other specific students. (*Id.* ¶¶ 11–12.) Thus, if the Court does not stay its injunction, the District will be forced to purchase a new set of books that its elected Board has determined are harmful to the students in the District's charge. (*Id.* ¶ 13.) This will cause irreparable harm by forcing the District to exercise its expressive editorial discretion against its will. *See Awad v. Ziriax*, 670 F.3d 1111, 1131 (10th Cir. 2012) ("[w]hen an alleged constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary.").

If the Court does not stay its order, the District will also be forced to develop new library policies. Regardless of the District's motives for removing the books, most of them contain content that is unquestionably inappropriate for children. In fact, the book removals in question were a response to an incident where a middle school student was allowed to check out a book that the publishers of the book determined was inappropriate for her age. (*See* Snowberger Decl., ¶ 11, ECF No. 25-1.) A number of the books in

13

question contain explicit and grotesque descriptions of rape and incest. (*See, e.g.*, BookLooks Ratings 19, ECF No. 25-18 ("Still, as I opened my mouth, his hand slapped down on it. Those sublime muscles hardened. Just relax. You'll love it. My brand-new Victoria's Secrets shredded, and I felt the worst of Brendan pause, savoring my terror. They all love it. Had he done it a different way, I might have responded with excitement. Instead, I froze as he pushed inside. There it is. Oh, God. There it goes. It went, all right, with an audible tear. Pain mushroomed into agony and all I could do was go stiff. You weren't lying, you bitch! I laid there, sobbing, as he worked and sweated over me. Stoked by the monster, it took him a long time to finish. Give me a line, I'll give you an encore. He pulled away sticky and bloody."); *see also id.* 55–57, 80.) Politics or not, the District will have to find a way to accommodate reasonable parental concerns about student access to such grotesque material. And it will have to do so while trying to navigate a preliminary injunction. These "necessary alterations in operating procedures" constitute irreparable harm sufficient to justify a stay. *Career Colleges*, 98 F.4th at 235.

### III. The Plaintiffs will not be substantially injured by a stay

Recognizing the serious harms above, the balance of equities tips decidedly in the District's favor. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). In contrast to the irreparable harm faced by the District, Plaintiffs will suffer no harm if the Court stays its injunction. As briefed to the Court, Plaintiffs currently have full and free access to the books in question. Plaintiffs have no claim to substantial injury when they already have access to the information they seek. *See C.K.-W. by & through T.K. v. Wentzville R-IV Sch. Dist.*, 619 F. Supp. 3d 906, 919 (E.D. Mo. 2022) ("The removal of the books at issue from the District's schools does not stop any student from reading or discussing the book, which surely would raise a more serious issue.").

The Plaintiffs' significant delay in seeking preliminary relief also weighs in the District's favor. *See GTE Corp. v. Williams*, 731 F.2d 676, 678 (10th Cir. 1984). "Courts in both this jurisdiction and others have uniformly determined that a movant's delay in seeking injunctive relief warranted the relief's denial." *Colo. Motor Carriers Ass'n v. Town of Vail*, No. 123CV02752CNSSTV, 2023 WL 8702074, at *12 (D. Colo. Dec. 15, 2023). Even if the Plaintiffs' delay was not sufficient per se to require denial of their request for preliminary-injunctive relief, it should weigh in the District's favor when considering the request for a stay pending appeal.

## IV.   The public interest favors a stay

The public interest inquiry "primarily addresses impact on non-parties rather than parties." *Bernhardt v. L.A. Cty.*, 339 F.3d 920, 931–32 (9th Cir. 2003). The Court must "pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Here, the public interest favors granting a stay. Thousands of students and their parents rely on the District to appropriately curate its library collections. The Court should at least wait to intervene in the decisions of the District's elected school board until the Tenth Circuit has had an opportunity to weigh the significant legal issues presented by its order.

## CONCLUSION

The District asks the Court to stay its preliminary injunction pending appeal to the Tenth Circuit. Additionally, the District asks the Court to enter an administrative stay pending briefing on the District's motion for a stay pending appeal, extending until at least 48 hours after the Court decides the motion. Such a stay would give the parties time to fully brief the District's motion without the threat of an impending injunction, which will require the District to repurchase and stock the at-issue titles.

Dated: March 21, 2025

Respectfully submitted,

*s/ Julian R. Ellis, Jr.*

| | |
|---|---|
| Jonathan F. Mitchell<br>MITCHELL LAW PLLC<br>111 Congress Avenue, Suite 400<br>Austin, TX 78701<br>Telephone: (512) 686-3940<br>Email: jonathan@mitchell.law<br><br>Bryce D. Carlson<br>MILLER FARMER CARLSON LAW LLC<br>5665 Vessey Road<br>Colorado Springs, CO 80908<br>Telephone: (970) 744-0247<br>Email: bryce@millerfarmercarlson.com | Christopher O. Murray<br>Laura J. Ellis<br>Julian R. Ellis, Jr.<br>FIRST & FOURTEENTH PLLC<br>2 N. Cascade Avenue, Suite 1430<br>Colorado Springs, CO 80903<br>Telephone: (719) 286-2475<br>Emails: chris@first-fourteenth.com<br>　　　　laura@first-fourteenth.com<br>　　　　julian@first-fourteenth.com<br><br>Michael Francisco<br>FIRST & FOURTEENTH PLLC<br>800 Connecticut Avenue, Suite 300<br>Washington, D.C. 20006<br>Telephone: (202) 784-0522<br>Email: michael@first-fourteenth.com<br><br>*Attorneys for Defendant* |

## CERTIFICATE OF SERVICE

  I certify that on March 21, 2025, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following email addresses:

  may@wtotrial.com
  sneel@aclu-co.org
  tmacdonald@aclu-co.org
  dec@wtotrial.com
  whitt@wtotrial.com

          *s/ Kelly Callender*
          FIRST & FOURTEENTH PLLC