UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:24-cv-03512-CNS-STV

KRISTEN CROOKSHANKS, as parent and next of friend of a
minor on behalf of C.C.;
MINDY SMITH, as parent and next of friend of a minor on
behalf of E.S.;
NAACP-COLORADO-MONTANA-WYOMING STATE AREA
CONFERENCES; and
THE AUTHORS GUILD,

          Plaintiffs,

v.

ELIZABETH SCHOOL DISTRICT,

          Defendant.

---

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR ADMINISTRATIVE
STAY AND STAY PENDING APPEAL**

---

Defendant Elizabeth School District (the "District") asks this Court to backtrack on last week's ruling granting Plaintiffs' motion for a preliminary injunction by, in effect, maintaining its book ban while it seeks relief from the Tenth Circuit. In support, the District relies on legal arguments that the Court considered and rejected in a well-reasoned opinion and a spurious argument that putting the books back constitutes "irreparable harm." There is no reason to permit the District to continue abridging Plaintiffs' federal and state constitutional rights during the pendency of the District's appeal when all that is required is simply placing the books at issue (the "Removed Books") back on the shelves. The District's Motion for Administrative Stay and Stay

Pending Appeal filed on March 21, 2025 (ECF No. 42), should be denied by this Court because the District cannot make a strong showing that it will succeed on the merits or be irreparably harmed absent a stay.

First, as this Court just held, the District's position is contrary to applicable First Amendment authority. The District's book ban is not government speech; it is not school-sponsored speech; nor is it reasonably related to legitimate pedagogical concerns. Instead, this Court found Plaintiffs are likely to prevail in showing the District removed the books to further its partisan viewpoints and because it disagreed with the views expressed in the books in violation of both the federal and Colorado Constitutions. Having made the requisite showing, Plaintiffs are entitled to move forward with discovery and a trial on the merits while the District remains enjoined from violating their constitutional rights.

Second, the District cannot show it will be irreparably harmed absent a stay. The District has copies of the Removed Books that it can put back on shelves immediately. There is no irreparable harm caused by reshelving the books. Further, the District's argument that it will be irreparably harmed by the "intrusion" caused by the injunction is baseless. Enjoining the District from removing additional books based on political ideology, is not, as the District states, an "intrusion"—it is the law. Every day that the books are not returned to the school libraries inflicts irreparable harm to Plaintiffs' federal and state constitutional rights. The Court should not allow Plaintiffs' rights to be violated any longer and deny the District's request for a stay of its Order pending appeal.

**BACKGROUND**

Because the Court is intimately familiar with the facts of this case—having just issued a thorough 45-page Order granting Plaintiffs' motion for preliminary injunction (ECF No. 35)—Plaintiffs will not repeat the facts again here.

Since the Court issued its Order on March 19, 2025, there have been several developments. On March 20, the District filed a notice of appeal with the Tenth Circuit, appealing both the Court's denial of its motion to exclude evidence and the Court's grant of Plaintiffs' motion for preliminary injunction. (ECF No. 38.) On March 21, the District filed its Motion for Administrative Stay and Stay Pending Appeal with this Court. (ECF No. 42 ("Motion")). This Motion alleged—for the first time—that the Removed Books were donated by a community member with the condition that they would not be placed back on library shelves. (*Id.* at 3 n.2.) The District neglected to mention this condition earlier, only stating that it made a set of Removed Books available to Plaintiffs. (ECF No. 25-1 ¶ 38.)

On March 24, the District filed an Emergency Motion for Administrative Stay and Stay Pending Appeal with the Tenth Circuit. (No. 25-1105, ECF No. 18-1.) Before the filing of that motion, Plaintiffs' counsel communicated to the District's counsel that it was donating copies of all of the Removed Books to the District. Plaintiffs' counsel stated the books would be delivered by March 25 to help facilitate the District's compliance with this Court's Order, since the District's new allegations that it discarded the Removed Books prior to litigation and that the copies provided by an anonymous donor were not available to all students—just Plaintiffs. (Exhibits 1 & 3, Decl. of Thomas Dec.) The

District did not inform the Tenth Circuit that it was receiving copies of the Removed
Books that would allow it to comply with this Court's Order on time. (*See* No. 25-1105,
ECF No. 18-1.) Copies of the Removed Books were delivered to defense counsel's
offices on the afternoon of March 25. (Exhibit 2, Decl. of Thomas Dec.)

On March 25, this Court issued an order staying its Order granting Plaintiffs'
motion for preliminary injunction until 48 hours after it rules on the District's Motion.
(ECF No. 45.) Shortly thereafter, the Tenth Circuit issued an order denying the District's
emergency motion for stay without prejudice. (No. 25-1105, ECF No. 19.)

## LEGAL STANDARD

In determining whether a stay pending appeal of a preliminary injunction is
warranted, this Court considers four factors: "(1) whether the stay applicant has made a
strong showing that he is likely to succeed on the merits; (2) whether the applicant will
be irreparably injured absent a stay; (3) whether issuance of the stay will substantially
injure the other parties interested in the proceeding; and (4) where the public interest
lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009). The first two factors "are the most
critical." *Id.* "[M]ore than a mere possibility" of success on the merits and irreparable
injury is required. *Id.* at 434–35 (internal quotations omitted). A "stay is not a matter of
right, even if irreparable injury might otherwise result." *Id.* at 433. As the party
requesting a stay, the District bears the burden of showing that such a stay is warranted
under the circumstances.

## ARGUMENT

The Court should deny the District's request to stay its Order granting a preliminary injunction pending appeal. The District fails to meet its burden of making a strong showing that it is likely to succeed on the merits of its arguments on appeal and that it will suffer irreparable harm absent a stay of the preliminary injunction. The District has not met its burden under any of the four relevant factors.

## I.     THE DISTRICT HAS NOT MADE THE REQUISITE STRONG SHOWING THAT IT IS LIKELY TO SUCCEED ON APPEAL.

### A.     The Court properly found that a full evidentiary hearing was unnecessary.

This Court correctly found that it could proceed with its ruling without a full evidentiary hearing and without applying the federal rules of evidence. (Order at 10–13.) Without a single citation to case law, the District relitigates this Court's decision to grant a preliminary injunction without a full evidentiary hearing, asserting that this "presents a fairness problem" and "is prejudicial." (Motion at 7.)

Federal Rule of Civil Procedure 65 does not require courts to hold a hearing in advance of deciding a motion for preliminary injunction. Indeed, district courts have broad discretion in determining whether to hold such a hearing. *See Carbajal v.* Warner, 561 F. App'x 759, 764 (10th Cir. 2014) (reviewing district court's denial of a request for evidentiary hearing on a motion for preliminary injunction for abuse of discretion, and finding none); *Buentello v. Boebert*, 545 F. Supp. 3d 912, 914 n.1 (D. Colo. 2021). And courts are certainly not required to hold a full-scale evidentiary hearing applying the federal rules of evidence. As the Tenth Circuit has explicitly stated, "[t]he Federal Rules of Evidence do not apply to preliminary injunction hearings." *Heideman v. S. Salt Lake*

*City*, 348 F.3d 1182, 1188 (10th Cir. 2003). Therefore, the District's characterization of evidence as "inadmissible" at this stage is incorrect. The District has not made the requisite strong showing that it is likely to succeed on appeal because the Court did not hold such an evidentiary hearing.

**B.      The Court correctly determined that the government speech doctrine is inapplicable to the District's removal of the books.**

No court, including this one, has agreed with the District's assertion that its library curation decisions are government speech. In fact, every court to have addressed this issue has found the opposite. *See GLBT Youth in Iowa Sch. Task Force v. Reynolds*, 114 F.4th 660, 667 (8th Cir. 2024) ("[T]he placement and removal of books in public school libraries" is not government speech.); *PEN Am. Ctr., Inc. v. Escambia Cnty. Sch. Bd.*, 711 F. Supp. 3d 1325, 1331 (N.D. Fla. 2024) (school library not viewed "as the government's endorsement of the views expressed in the books"); *Virden v. Crawford County*, No. 2:23-CV-2071, 2024 WL 4360495, at *5 (W.D. Ark. Sept. 30, 2024) ("[T]he Supreme Court has not extended [government-speech] doctrine to the placement and removal of books in libraries."). Indeed, "if placing these books on the shelf of public school libraries constitutes government speech, the State is babbling prodigiously and incoherently." *GLBT Youth in Iowa Sch. Task Force*, 114 F.4th at 668 (internal quotations omitted).

Moreover, the Supreme Court has explicitly warned against expanding the government speech doctrine given that "it is a doctrine that is susceptible to dangerous misuse." *Matal v. Tam*, 582 U.S. 218, 235 (2017) ("[W]e must exercise great caution before extending our government-speech precedents."). Thus, the District's reliance on

*Moody v. NetChoice*—although characterized as "compelling" by the Court—does not establish a "strong showing" that such an argument would be successful, especially in light of all of the other case law that has held to the contrary when squarely addressing the question of government speech in the context of library book removals. The District cannot make the requisite strong showing of success on the merits where courts have historically limited the doctrine it seeks to expand. *See Bradford v. U.S. Dep't of Labor*, No. 21-cv-03283-PAB-STV, 2022 WL 266805, at 3 (D. Colo. Jan. 28, 2022) (no "strong showing" of success on appeal established where higher courts had not previously decided the issue and courts had "historically" applied doctrine differently than moving party argued).

      **C.**    **The Court properly found that the District cannot prevail under the *Hazelwood* standard.**

The District maintains its argument that *Hazelwood* bars Plaintiffs' claims. It does not. *Hazelwood* applies only to restrictions on *curricular* speech—not to the removal of books from school libraries—and the District could not satisfy *Hazelwood*'s test even if it did apply.

In *Hazelwood*, the Supreme Court distinguished between speech that a school "tolerate[s]" and "speech that may fairly be characterized as part of the school curriculum," which "the public might reasonably perceive to bear the imprimatur of the school." 484 U.S. 260, 271 (1988). The Supreme Court held that any restrictions on curricular speech must be "reasonably related to legitimate pedagogical concerns." *Id.* at 273. Here, the Board's decision to remove books from school libraries "concerns a non-curricular matter" making *Hazelwood* inapplicable. *See Case v. Unified Sch. Dist.*

*No. 233, Johnson Cnty., Kan.*, 895 F. Supp. 1463, 1469 (D. Kan. 1995) (declining to

apply *Hazelwood* where book was removed from school library because *Hazelwood*

"was a curriculum case").

And even if *Hazelwood* did apply, the District cannot meet its standard. "The

imprimatur concept covers speech that is so closely connected to the school that it

appears the school is somehow sponsoring the speech." *Fleming v. Jefferson Cnty.

Sch. Dist. R-1*, 298 F.3d 918, 925 (10th Cir. 2002). As this Court rightfully explained, "no

reasonable person would assume that the District is sponsoring the speech or the views

contained in the Removed Books." (Order at 32); *see also PEN Am. Ctr., Inc.*, 711 F.

Supp. 3d at 1331 ("[T]he Court simply fails to see how any reasonable person would

view the contents of the school library (or any library for that matter) as the

government's endorsement of the views expressed in the books on the library's

shelves.").

Moreover, the Board Members' contemporaneous statements about the

Removed Books show that their decisions were not "reasonably related to legitimate

pedagogical concerns." *Hazelwood*, 484 U.S. at 273. While the District attempts to walk

back the Board Members' statements by pointing to the Board Members' declarations

which insist that the books were removed due to vulgarity or age-inappropriateness, the

Board Members' emails explicitly state otherwise. (*See* Order at 29 (citing Board

Member emails).) In its Motion, the District cherry picks passages from three of the

Removed Books in an effort to sensationalize their arguments and re-write their

motivations for removing the books. (*See* Motion at 1.) Notably, its Motion says nothing

about books like *You Should See Me in a Crown*, *#Pride: Championing LGBTQ Rights, or It's Your World—If You Don't Like It, Change It*—none of which contain any sexually explicit content. At the preliminary injunction stage, the Court correctly refused to credit the District's litigation-inspired attempts to claim it removed the books due to legitimate pedagogical concerns. The District will have an opportunity to persuade a jury or this Court otherwise upon a full evidentiary record at trial.

The District has not shown that its library curation decisions are curricular speech under the purview of *Hazelwood*, or that the removal of the books was based on any legitimate pedagogical concern. Thus, the District has not made a strong showing that it will succeed on this argument on appeal.

### D.    The District's argument that Plaintiffs have no cause of action under the Colorado Constitution is both waived and erroneous.

For the first time in this matter, the District argues that Article II, Section 10 of Colorado's Constitution does not confer a private right of action. Because this argument was not raised to the Court in the District's response to Plaintiffs' motion for preliminary injunction, it is waived, so there is no possibility that it would be successful on appeal. This argument is also wrong.

The District cites *Board of County Commissioners v. Sundheim* for the proposition that there is no cause of action under the Colorado Constitution where a plaintiff may recover under the federal Constitution. 926 P.2d 545, 553 (Colo. 1996). But *Sundheim* held as such for damages actions, not for actions requesting declaratory or injunctive relief, as Plaintiffs seek under the Colorado Constitution. For claims seeking declaratory or injunctive relief, the law allows for a private right of action under the

Colorado Constitution. *See Bock v. Westminster Mall Co.*, 819 P.2d 55, 56 (Colo. 1991)
(recognizing private right of action under Article II, Section 10 of the Colorado
Constitution for declaratory and injunctive relief); *Brammer-Hoelter v. Twin Peaks
Charter Acad.*, 81 F. Supp. 2d 1090, 1098 (D. Colo. 2000) (explaining that Colorado
courts recognize a private right of action under Article II, Section 10 where the plaintiffs
"sought prevention of future violations of their free speech rights").

And regardless of the District's waiver and its incorrect interpretation of the case
law, even if Plaintiffs' Colorado Constitution claims were invalidated, this Court's
reasoning with respect to Plaintiffs' federal claims still stands. So any invalidation of
Plaintiffs' Colorado Constitution claims would have no effect on the Court's decision to
grant Plaintiffs' motion for preliminary injunction.

### E.    The Court correctly found the Author Plaintiffs' First Amendment rights were violated.

It is well-settled that the Author Plaintiffs have a First Amendment right to share
their books free from viewpoint discrimination. *See Martin v. City of Struthers, Ohio*, 319
U.S. 141, 143 (1943) (The First Amendment "embraces the right to distribute
literature."); *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 64 (1963) (The First
Amendment "embraces the circulation of books").

Nonetheless, the District contends that the Author Plaintiffs have no right to have
their books in school libraries and reasserts that the government speech doctrine and
*Hazelwood* should apply. As explained above, neither of these doctrines are applicable
here, but *Hazelwood* particularly not so. *Hazelwood* identified the relevant question as
one of exercise of editorial control over *student speech*. *See* 484 U.S. at 273. "Here, the

'speakers' are not students, but rather the authors and publishers of the books that are subject to removal." *Penguin Random House LLC v. Robbins*, No. 4:23-cv-00478-SHL-SBJ, ECF No. 113, at 15 (S.D. Iowa March 25, 2025) (granting preliminary injunction in favor of author plaintiffs).

The District argues that "[t]aking the authors [sic] forum argument to its logical conclusion" means that "the District is not permitted to exclude books for the views they espouse." (Motion at 10–11.) As this Court ruled, the District is not permitted to *remove books* from its libraries based on an author's viewpoint, and the removals made here were expressly viewpoint-based. (Order at 36.) The District fails to make a strong showing that it is likely to show otherwise and succeed on the merits of this claim on appeal.

## II.      THE DISTRICT WILL SUFFER NO IRREPARABLE HARM ABSENT A STAY.

The District claims it will suffer two types of irreparable harm without a stay, neither of which are availing. Irreparable harm requires that the alleged injuries be "both certain and great" and "not merely serious or substantial." *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1250 (10th Cir. 2001).

First, the District manufactures an injury based on speculation and an overbroad reading of the Court's Order. In addition to ordering that the books be returned to the libraries, the Court ordered that "the District is enjoined from removing additional books because the District disagrees with the views expressed therein or merely to further their preferred political or religious orthodoxy." (Order at 45.) This is simply a restatement of Plaintiffs' constitutional protections under the First Amendment.

Enjoining the District from making decisions to remove additional books based on political ideology is not, as the District states, an "intrusion"—it is the law. *See Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*, 457 U.S. 853, 872 (1982) (explaining school districts "may not remove books from school library shelves simply because they dislike the ideas contained in those books and seek by their removal to prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion"); *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 273 (1988) (school districts may only limit "student speech in school-sponsored activities so long as their actions are reasonably related to legitimate pedagogical concerns"); *Tinker v. Des Moines Indep. Comm. Sch. Dist.*, 393 U.S. 503, 509 (1969) (school districts may not restrict speech based on a "mere desire to avoid the discomfort and unpleasantness that always accompany an unpopular viewpoint"). As the Court clearly explained, the "requested injunction does not require the District to do something that it was not already doing during the uncontested period." (Order at 15.) That the District characterizes decisions about age-appropriate book content as "necessarily political issues" is highly concerning (Motion at 12), and underscores the necessity of this Court's Order.

Second, the District states that it will be required to take affirmative action absent a stay in the form of repurchasing and reshelving the Removed Books and by adopting new interim library policies. Not so. In addition to the books loaned to the District by an anonymous donor, the District was provided with a second set of books free of charge and free of any restrictions on who may access them. (Exhibit 1, Decl. of Thomas Dec.)

The contention that the mere reshelving of the Removed Books would cause irreparable harm is "absurd." (Order at 43.) And even if the District had not received this donation, the minimal cost of 19 books is purely monetary, and, by definition, reparable. *See Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1258 (10th Cir. 2003). Moreover, the Removed Books had been on the District's library shelves for years prior to their removal—ten of the books had been on library shelves for over a decade—and the District cannot (and does not) claim that the books were causing irreparable harm then.

As to the need for new library policies, nothing in the Court's order requires it. And even if it did, the District fails to explain how the creation of constitutionally-compliant library curation policies will cause it irreparable harm. The District's lone citation in support of this argument is inapposite, as the Fifth Circuit held there that "altered business operations and missed opportunities" such as "abandoning plans to open a [business] location" or to consolidate locations, may constitute irreparable harm. *Career Colleges & Schs. of Texas v. U.S. Dep't Educ.*, 98 F.4th 220, 237 (5th Cir. 2024). The mere modification of existing library protocols of a school district presents no such harm. The District has failed to satisfy its burden of showing "more than a mere possibility" of injury, *Nken*, 556 U.S. at 434–35, both "certain and great" absent a stay, *Prairie Band of Potawatomi Indians*, 253 F.3d at 1250.

## III.    PLAINTIFFS, HOWEVER, WILL BE SUBSTANTIALLY HARMED IF THE ORDER IS STAYED.

Where, as here, Plaintiffs' First Amendment rights are implicated, there is a presumption of irreparable injury. *Cmty. Commc'ns Co., Inc. v. City of Boulder, Colo.*, 660 F.2d 1370, 1376 (10th Cir. 1981). "[T]he loss of First Amendment freedoms, for

even minimal periods of time, unquestionably constitutes irreparable injury." *Verlo v. Martinez*, 820 F.3d 1113, 1127 (10th Cir. 2016) (quoting *Elrod v. Burns,* 427 U.S. 347, 373 (1976)). Plaintiffs are injured both by the loss of access to the Removed Books in the school libraries, and by the stigma that the District's actions have placed on the Removed Books and the ideas they contain. *See Counts v. Cedarville School District*, 295 F. Supp. 2d 996, 1002 (W.D. Ark. 2003) (holding that requiring parental permission to check out Harry Potter books violated students' First Amendment rights in part because "the stigmatizing effect of having to have parental permission to check out a book constitutes a restriction on access").

The fact that the Removed Books are only available to Plaintiffs upon identification of their affiliation with this litigation is further stigmatizing and harmful. Courts have long recognized that "compelled disclosure of affiliation with groups engaged in advocacy may constitute as effective a restraint on freedom of association" as other restrictions on expression. *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 462 (1958). As this Court aptly stated, the District's "proposed remedy" to make available the Removed Books only to Plaintiffs is in fact "no remedy at all." (Order at 39.) And the fact that Plaintiffs may be able to access the Removed Books through other sources—including public libraries, online libraries, Amazon, or even, as the District proposes, adult bookstores—is also not a remedy under the First Amendment. *See Pratt v. Ind. Sch. Dist. No. 831, Forest Lake, Minn.*, 670 F.2d 771, 779 (8th Cir. 1982).

## IV.    THE PUBLIC INTEREST WEIGHS AGAINST A STAY.

"[A]s far as the public interest is concerned, it is axiomatic that the preservation of First Amendment rights serves everyone's best interest." *Local Org. Comm., Denver Chapter, Million Man March v. Cook*, 922 F. Supp. 1494, 1501 (D. Colo. 1996). Indeed, "[i]t is always in the public interest to prevent the violation of a party's constitutional rights." *Awad v. Ziriax*, 670 F.3d 1111, 1132 (10th Cir. 2012). The longer the Removed Books are kept off the shelves, the longer Plaintiffs will be denied their fundamental First Amendment rights under the federal and Colorado Constitutions.

## CONCLUSION

The District fails to meet its burden of making a strong showing that it is likely to succeed on the merits of its arguments on appeal and that it will suffer irreparable harm absent a stay of the preliminary injunction. Plaintiffs and the public interest will be harmed if the Order is stayed. The District's request for a stay of the Order pending appeal should be denied.


Dated:  March 28, 2025.                    Respectfully submitted,


                                           *s/ Kendra Sendler Kumor*
                                           Craig R. May
                                           Thomas C. Dec
                                           Celyn D. Whitt
                                           Kendra Sendler Kumor
                                           Wheeler Trigg O'Donnell LLP
                                           370 Seventeenth Street, Suite 4500
                                           Denver, CO 80202
                                           Telephone: 303.244.1800
                                           Facsimile:   303.244.1879

Email:  may@wtotrial.com
dec@wtotrial.com
whitt@wtotrial.com
kumor@wtotrial.com

*In cooperation with American Civil
Liberties Union Foundation of Colorado*

Timothy R. Macdonald
Sara R. Neel
American Civil Liberties Foundation of
Colorado
303 E. 17th Avenue, Suite 350
Denver, CO 80203
Telephone:   720.402.3107
Email: tmacdonald@aclu-co.org
sneel@aclu-co.org

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE (CM/ECF)</u>

I HEREBY CERTIFY that on March 28, 2025, I electronically filed the foregoing **PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR ADMINISTRATIVE STAY AND STAY PENDING APPEAL** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following email addresses:

- **Timothy R. Macdonald**
  tmacdonald@aclu-co.org, mbailey@aclu-co.org, sneel@aclu-co.org

- **Sara R. Neel**
  sneel@aclu-co.org, mbailey@aclu-co.org

- **Christopher Owen Murray**
  chris@first-fourteenth.com, pchesson@bhfs.com

- **Michael Lee Francisco**
  michael@first-fourteenth.com, bethany@statecraftlaw.com

- **Julian R. Ellis, Jr**
  julian@first-fourteenth.com, kelly@first-fourteenth.com, milly@First-fourteenth.com

- **Laura J. Ellis**
  laura@first-fourteenth.com, kelly@first-fourteenth.com, milly@first-fourteenth.com

- **Bryce D. Carlson**
  bryce@millerfarmercarlson.com

- **Jonathan F. Mitchell**
  jonathan@mitchell.law

*s/ Kendra Sendler Kumor*