IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:24-cv-03512-CNS-STV

KRISTEN CROOKSHANKS, as parent and next of friend of a minor on behalf of C.C.;
MINDY SMITH, as parent and next of friend of a minor on behalf of E.S.;
NAACP–COLORADO–MONTANA–WYOMING STATE AREA CONFERENCES; and
THE AUTHORS GUILD,

    Plaintiffs,

v.

ELIZABETH SCHOOL DISTRICT,

    Defendant.

# ORDER

This is a book-removal case stemming from the Elizabeth School District (the District) in Elizabeth, Colorado. On March 19, 2025, the Court granted Plaintiffs' motion for preliminary injunction and denied the District's motion to exclude Plaintiffs' proffered evidence supporting their preliminary injunction motion. ECF No. 35 (order). The District appealed and simultaneously moved to stay the Court's order pending appeal. ECF No. 42. Plaintiffs responded to the motion to stay, ECF No. 48, and the District replied, ECF No. 49. Because all four factors weigh against the District's requested stay, the Court DENIES the District's motion. The District is ordered to return the Removed Books to the library shelves by 5:00 p.m. on April 5, 2025, and it is enjoined from any conduct that violates the Court's order on Plaintiffs' motion for preliminary injunction.

1

## I. RELEVANT PROCEDURAL BACKGROUND[1]

The day after the Court entered its order on Plaintiffs' motion for preliminary injunction, the District filed a notice of appeal with the Tenth Circuit, appealing both the Court's denial of its motion to exclude evidence and the Court's grant of Plaintiffs' motion for preliminary injunction. ECF No. 38. And the next day, on March 21, 2025, the District filed its motion to stay pending appeal with this Court. ECF No. 42.

On March 24, 2025, the District filed an Emergency Motion for Administrative Stay and Stay Pending Appeal with the Tenth Circuit. ECF No. 46. On March 25, 2025, this Court issued an order staying its March 19 order granting Plaintiffs' motion for preliminary injunction until 48 hours after it rules on the District's motion. ECF No. 45. The Tenth Circuit then issued an order denying without prejudice the District's emergency motion for stay. ECF No. 46. The District's motion to stay is now ripe for review.

## II. LEGAL STANDARD

In determining whether a stay pending appeal of a preliminary injunction is warranted, the Court considers four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). There is "substantial overlap between these and the factors governing

---

[1] The Court provided a thorough factual background of this dispute in its March 19, 2025 order, ECF No. 35 at 1–7, and declines to repeat that background here.

2

preliminary injunctions." *Id.* The first two factors are the "most critical," and the movant must show that the "chance of success on the merits [is] better than negligible." *Id.* (internal citation and quotations omitted); *Instructure, Inc. v. Canvas Techs. Inc.*, No. 221CV00454-DAK-CMR, 2022 WL 170067, at *3 (D. Utah Jan. 19, 2022) (denying the defendant's motion to stay pending appeal, explaining that the defendant failed to meet its burden). "[S]imply showing some possibility of irreparable injury fails to satisfy the second factor." *Nken*, 556 U.S. at 434 (internal citation and quotations omitted).

### III. ANALYSIS

#### A. The District's Likelihood of Success on Appeal (Factor 1)

The District acknowledges that the Court has already held that Plaintiffs are likely to succeed on the merits of their claims, and thus it is unlikely that the Court will find that the District will succeed on the merits of its appeal. ECF No. 42 at 4–5. On this point, the Court agrees. However, the Court will briefly address each argument raised by the District in turn.

##### i. The Court's Denial of the District's Motion to Exclude Evidence

The District first argues that the Court "granted the preliminary injunction by resolving contested fact issues with inadmissible evidence without an evidentiary hearing." ECF No. 42 at 5. The District thus contends that it is likely to prevail on its appeal because the Court did not hold an evidentiary hearing. ECF No. 42 at 5–7. The Court disagrees.

On its first point, the District fails to identify any such "inadmissible" evidence the Court relied on despite its broad argument to the contrary. To rehash the District's

3

objections, it objected to its own employees' and Board directors' emails as hearsay. ECF No. 35 at 8 (summarizing the District's objections). The Court explained that statements by Superintendent Snowberger, Board directors, Chief Academic Officer Moore, and other District employees are not hearsay; under Federal Rule of Evidence 801(d)(2)(D), these are opposing party statements that are excluded from the definition of hearsay. *Id.* at 8–9.

Moreover, even if the Court did rely on hearsay statements, courts in this Circuit routinely find that "hearsay statements . . . are fair game" at the preliminary injunction stage. *EIS Ultimate Holding, LP v. Huset*, No. 23-CV-02324-GPG-MDB, 2024 WL 4472008, at *9 (D. Colo. Sept. 19, 2024) (citing *Willey v. Sweetwater Cnty. Sch. Dist. No. 1 Bd. of Trustees*, 680 F. Supp. 3d 1250, 1268 (D. Wyo. 2023) (observing that "a court may consider affidavits based on hearsay when evaluating requests of preliminary injunctions"), and *Shea v. Ditech Fin. LLC*, 208 F. Supp. 3d 380, 382 (D. Mass. 2016) ("The Court may also rely on otherwise inadmissible evidence, including hearsay, in deciding a motion for preliminary injunction.")).

On its second point, the Court is not persuaded that the District is likely to prevail on its appeal because the Court did not hold an evidentiary hearing. ECF No. 42 at 5–7. That is because no hearing was required to distill the District's motivations for removing the books: the Board members' motivations were plain from their contemporaneous emails. *See, e.g.*, ECF No. 9-9 at 3 (Director Booth email to the Board directors and Superintendent Snowberger: "it's equally important to remember that our commitment to conservative values was a key aspect of our campaign"); *id.* ("conservative values are

exactly what we are and plan to continue to bring into the district"); ECF No. 9-12 at 3–4 (Director Powell explaining that she initially was in favor of keeping *#Pride* and *You Should See me in a Crown* in the libraries because "it would be a good thing to show some openness to other viewpoints," to which Director Booth responded, "[p]ersonally, LGBTQ is only regarding sexual preference which doesn't belong in any school," prompting Director Powell to "change[ her] vote to on these two to REMOVE"); ECF No. 9-14 (Director Powell referring to one of the Removed Books as the "LGBTQ book," noting that two books have "gender identity ideology in them, and do we really want that out there at all?"). The Court thus puts no weight in the District's post-litigation statements that no Board director voted to remove any books based on partisan or political motives. ECF No. 42 at 5.[2]

And equally important is the Tenth Circuit's guidance that the "Federal Rules of Evidence do not apply to preliminary injunction hearings." *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1188 (10th Cir. 2003) ("We must be mindful, therefore, as the Supreme Court has cautioned, that 'a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits.'" (quoting *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981))). Finally, courts have broad discretion in determining whether to hold such a hearing. *See Carbajal v.*

---

[2] In its reply in support of its motion to stay, the District attaches a 25-page affidavit from Superintendent Snowberger detailing a March 28, 2025 special meeting of the School Board. ECF No. 49-1. The Court has reviewed that affidavit and makes the following observations: First, the District appears to be attempting to supplement the record that was before the Court on the motion for preliminary injunction. This is improper. Second, the affidavit is purportedly offered to support the District's decision to reject the donation of the subject books that was necessitated by the District's undisclosed decision to destroy the books. Whether the District accepts the donation is not this Court's concern.

Warner, 561 F. App'x 759, 764 (10th Cir. 2014) (reviewing the district court's denial of a request for evidentiary hearing on a motion for preliminary injunction for abuse of discretion, and finding no abuse).

The Court finds that the District is not likely to prevail on its appeal because the Court did not hold an evidentiary hearing applying the Federal Rules of Evidence.

### ii. The District's Book Removal Decision was Not Government Speech

The District again argues that the District's book removal decision was government speech immune from First Immunity scrutiny. *Id.* at 7. The Court previously explained that the District's argument found little support in the caselaw, and nothing in the District's motion changes that finding. Indeed, the District does not cite a single case to the contrary, instead relying on *Moody v. NetChoice, LLC*, a case that had nothing to do with government speech (it concerned states' power to control whether and how third-party social-media posts are presented to other users). 603 U.S. 707, 717 (2024). The District cannot clear the hurdle that every court to have addressed this issue disagreed with the District's position. *See GLBT Youth in Iowa Sch. Task Force v. Reynolds*, 114 F.4th 660, 667 (8th Cir. 2024) ("the placement and removal of books in public school libraries" is not government speech); *PEN Am. Ctr., Inc. v. Escambia Cnty. Sch. Bd.*, 711 F. Supp. 3d 1325, 1331 (N.D. Fla. 2024) (school library not viewed "as the government's endorsement of the views expressed in the books"); *Virden v. Crawford Cnty.*, No. 2:23-CV-2071, 2024 WL 4360495, at *5 (W.D. Ark. Sept. 30, 2024) ("[T]he Supreme Court has not extended [government-speech] doctrine to the placement and removal of books in libraries.").

The Court reiterates that it will not accept the District's invitation to extend the scope of government-speech by applying *NetChoice* or its other cited authority to the facts at hand—something the Supreme Court has expressly discouraged. *Matal v. Tam*, 582 U.S. 218, 235 (2017) ("[W]hile the government-speech doctrine is important—indeed, essential—it is a doctrine that is susceptible to dangerous misuse. If private speech could be passed off as government speech by simply affixing a government seal of approval, government could silence or muffle the expression of disfavored viewpoints. For this reason, we must exercise great caution before extending our government-speech precedents.").

### iii. Hazelwood *Does Not Apply, But Even if it Did, it Would Not Compel a Different Result*

The District also argues that the *Pico* plurality is inapplicable and instead the *Hazelwood* standard applies. ECF No. 42 at 8–9. The Court, however, found that Plaintiffs are likely to succeed on the merits of their claims under each standard advanced by the parties (*Pico*, *Hazelwood*, and *Tinker*). ECF No. 35 at 25. *Hazelwood* asks whether the activity at issue "might reasonably be perceived to bear the imprimatur of the school and that involve pedagogical concerns." *Fleming v. Jefferson Cnty. Sch. Dist. R-1*, 298 F.3d 918, 924 (10th Cir. 2002). If it does, then the speech is "school-sponsored speech" that may be immune from First Amendment scrutiny. *Id.* The Court already held that the District cannot make this showing.

Specifically, the Court found that the District provided no persuasive authority that merely maintaining a book on a school library shelf constitutes school-sponsored speech. "The imprimatur concept covers speech that is so closely connected to the school that it

7

appears the school is somehow sponsoring the speech." *Id.* at 925. The Court reasoned that, given the District's stated position concerning the Removed Books, there is no chance that anyone will connect the views expressed in the Removed Books to the District. ECF No. 35 at 32. The Court also held that the District's book-removal decision was not "reasonably related to legitimate pedagogical concerns." ECF No. 35 at 32 (quoting *Hazelwood*, 484 U.S. at 273, and explaining that, "[o]ther than pretextual declarations, at this stage, there simply is no reason to believe that the books were removed because of vulgarity, age-inappropriateness, or for legitimate pedagogical concerns; the Board's own emails strongly suggest that the book removal was motivated by the directors' 'commitment to conservative values'"). Finally, the Court went on to explain why it found the facts of *Hazelwood* and *Fleming* are plainly distinguishable. *Id.* at 33–34.

Nothing in the District's motion to stay warrants modification of the Court's order.

### iv. Plaintiff's Cause of Action Under the Colorado Constitution

For the first time in this matter, the District argues that Article II, Section 10 of the Colorado Constitution does not confer a private right of action. ECF No. 42 at 9–10. Because this argument was not raised before the Court in the District's response to Plaintiffs' motion for preliminary injunction, the Court finds that there is little to no possibility that the District would be successful on appeal on this issue. *McDonald v. Kinder-Morgan, Inc.*, 287 F.3d 992, 999 (10th Cir. 2002) ("[A]bsent extraordinary circumstances, arguments raised for the first time on appeal are waived.").

Moreover, Plaintiffs cite two cases in response that recognized a private right of action under Article II, Section 10 of the Colorado Constitution. ECF No. 48 at 10 (citing *Bock v. Westminster Mall Co.*, 819 P.2d 55, 56 (Colo. 1991) (recognizing private right of action under Article II, Section 10 of the Colorado Constitution for declaratory and injunctive relief), and *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 81 F. Supp. 2d 1090, 1098 (D. Colo. 2000) (explaining that Colorado courts recognize a private right of action under Article II, Section 10 where the plaintiffs "sought prevention of future violations of their free speech rights"). The District ignores this argument in its reply and thus apparently abandons its argument.

> v.   *The Author Plaintiffs have a First Amendment Right to Share Their Viewpoints*

The District argues that the Author Plaintiffs have no right to have their books in the District libraries. ECF No. 42 at 10–11. The District again points to the government-speech doctrine and *Hazelwood* for support. *Id.* The Court is not persuaded.

As the Court previously found, the Author Plaintiffs are likely to succeed on their claims because they have a constitutional right to share their books free from undue viewpoint-based censorship.[3] ECF No. 35 at 19; *see also Martin v. City of Struthers, Ohio*, 319 U.S. 141, 143 (1943) ("The right of freedom of speech and press has broad scope. The authors of the First Amendment knew that novel and unconventional ideas might disturb the complacent, but they chose to encourage a freedom which they believed essential if vigorous enlightenment was ever to triumph over slothful ignorance. *This*

---

[3] The Court notes that the District did not respond to this argument in its preliminary injunction response, thus providing another reason why it is unlikely to succeed on appeal on this issue.

*freedom embraces the right to distribute literature, and necessarily protects the right to receive it*." (internal citation omitted and emphasis added)); *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 64 n.6 (1963) ("The constitutional guarantee of freedom of the press embraces the circulation of books as well as their publication, and the direct and obviously intended result of the Commission's activities was to curtail the circulation in Rhode Island of books published by appellants." (internal citation omitted)).

\* \* \*

The District has not shown that it is likely to succeed on its appeal. The Court thus finds that this factor weighs in against a stay.

### B. Threat of Irreparable Harm if Stay Not Granted (Factor 2)

The District presents two arguments that it will suffer irreparable harm if the Court does not stay its preliminary injunction order. ECF No. 42 at 11–14. The Court will briefly address each argument in turn, concluding that neither argument is persuasive.

> *i. The Court's Order Does Not Intrude Into Future Board Decisions—Except to the Extent that those Decisions Violate the Constitution*

The District argues that it will be unable to curate its own library collection under the Court's order due to the "breathtakingly broad" nature of the Court's order. ECF No. 42 at 11–12. The Court is not persuaded by the District's manufactured injury.

The Court's order merely requires the District to adhere to the minimum basic constitutional requirements by enjoining the District from removing additional books because the District disagrees with the views expressed therein or merely to further their preferred political or religious orthodoxy—as was made apparent in the Board's contemporaneous emails. To the extent the order "intrudes" on the District's decision-

10

making abilities, it is because the District's conduct at issue violated the constitutional requirements set forth in *Pico*, *Hazelwood*, and *Tinker*.

### ii. The Preliminary Injunction is Not a Disfavored Injunction

The District argues that the Court's order is a disfavored injunction because it mandates that the District do two things: (1) repurchase and re-shelve copies of the Removed Books, and (2) adopt new interim library policies. ECF No. 42 at 12. The District, however, ignores that it waived this argument. Plaintiffs clearly sought "a preliminary injunction in order to preserve the status quo—when all of the Removed Books were available in ESD libraries." ECF No. 9 at 13. The District did not respond to this argument in response to Plaintiff's preliminary injunction motion. *See generally* ECF No. 25.

Courts in this Circuit routinely deem an issue waived when a party fails to respond to a movant's substantive argument. *See Phillips v. Calhoun*, 956 F.2d 949, 953–54 (10th Cir. 1992) ("[A] litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point." (quoting *Pelfresne v. Vill. of Williams Bay,* 917 F.2d 1017, 1023 (7th Cir. 1990))); *In re Stone Pine Inv. Banking, LLC*, 635 B.R. 379, 395 (D. Colo. 2021), *aff'd*, No. 21-1423, 2023 WL 8758947 (10th Cir. Dec. 19, 2023) ("Appellants neither contest this assertion in their reply nor identify any place in the record where they previously raised this argument before the Bankruptcy Court . . . . [Thus], the Court finds that Appellants have waived this argument."); *Rock Roofing, LLC v. Travelers Cas. & Sur. Co.*, 413 F. Supp. 3d 1122, 1128 (D.N.M. 2019) (plaintiff's failure to respond to defendant's argument waived the issue); *Zane v. Kramer*, 195 F. Supp. 3d 1243, 1256

11

(W.D. Okla. 2016) (plaintiff waived claim where he did not respond to argument raised in defendants' summary judgment motion); *Palmer v. Unified Gov't of Wyandotte Cnty./Kansas City, Kansas*, 72 F. Supp. 2d 1237, 1250–51 (D. Kan. 1999) ("[T]he court deems plaintiff's failure to respond to an argument raised in defendants' papers tantamount to an express abandonment of any such claim.").

Assuming *arguendo* that the District did not waive this argument, the Court is still not persuaded. The District discloses—for the first time—that it "discarded" its copies of the Removed Books after the Board's September 9, 2024 decision to permanently remove them. ECF No. 42 at 13. Notably, the District failed to include that fact in its prior briefing. *See* ECF No. 25. The District then discloses—again, for the first time—that the Removed Books in its current possession were donated by a community member with the condition that they would not be placed back on the library shelves for general access. ECF No. 42 at 14. Rather than being forthcoming with the Court about these facts, the District previously represented that the Removed Books were available to Plaintiffs, and only Plaintiffs, upon disclosure of their relationship with this lawsuit. ECF No. 25 at 10, 28 ("As of January 27, 2025, the District decided to place copies of each of the 19 titles that the School Board voted to remove in the library from which they were taken. These titles are available only to C.C., E.S., or any student who is either a member of the NAACP [], or who has a parent or guardian who is a member of the NAACP. All the current members of the School Board are aware of and have approved the return of the disputed books for the purpose of allowing the plaintiffs in this litigation to browse, read, or check out those

12

books in the school district's libraries." (internal citations omitted)). No mention was made of the destruction of the Removed Books.

The District's argument fails for three additional reasons. First, Plaintiffs have since provided the District with a set of books free of charge and free of any restrictions on who may access them. ECF No. 48 at 12–13. Thus, the District can no longer argue that it will suffer irreparable harm by being forced to repurchase the books.[4] Second, it is well-established that a harm is not irreparable when the losses may be compensated by monetary damages. *See Heideman*, 348 F.3d at 1189. And third, the District could have argued that the Court should order Plaintiffs to provide a bond in the event the Court granted Plaintiffs' preliminary injunction motion but decided not to make that argument.[5]

Turning to the District's argument that it would need to implement new library policies, nothing in the Court's order requires such conduct. The Court's order merely requires the District to return the Removed Books to the library shelves. Thus, there is no cognizable injury.

The second factor also weighs against a stay.

---

[4] Yet, in its reply brief, the District continues to argue that it suffer harm because it must purchase the Removed Books. ECF No. 49 at 2 (twice stating that it will need to repurchase the books); *id.* at 6 ("The fact that the Court's order requires the purchasing of the books only magnifies the mandatory nature of the injunction, it doesn't underlie it."). The District's decision to reject the donation and thus manufacture an injury is its own doing and will not create an irreparable harm. *Id.* at 1–2 (explaining that the Board "voted to reject all the donated books except one (*#Pride*)" in an emergency Board meeting).

[5] As the Court explained, Federal Rule of Civil Procedure 65(c) provides that a "court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." ECF No. 35 at 45 n.15. Plaintiffs argued that a security is not necessary here because the District will not suffer any undue harm if the Court grants Plaintiffs' motion, ECF No. 9 at 29, but the District offered no response and therefore conceded that security is unwarranted in this instance. Thus, the District's argument at this stage is untimely and waived.

### C. Harm to Opposing Party if Stay Granted (Factor 3)

The District next argues that Plaintiffs will not be injured by a stay. ECF No. 42 at 14–15. The Court disagrees. As the Court previously held, "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Verlo v. Martinez*, 820 F.3d 1113, 1127 (10th Cir. 2016) (quoting *Elrod v. Burns,* 427 U.S. 347, 373 (1976)). Stated differently, where "First Amendment rights are violated, irreparable injury is presumed." *Bioganic Safety Brands, Inc. v. Ament*, 174 F. Supp. 2d 1168, 1182–83 (D. Colo. 2001) (citing *Utah Licensed Bev. Ass'n v. Leavitt,* 256 F.3d 1061, 1076 (10th Cir. 2001)); *see also Awad v. Ziriax,* 670 F.3d 1111, 1131 (10th Cir. 2012) ("[W]hen an alleged constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." (citation and quotations omitted)). Nothing in the District's motion warrants reconsideration of this finding.

Like the prior factors, this factor weighs against a stay.

### D. Public Interest (Factor 4)

The District argues that the public interest favors granting a stay because "[t]housands of students and their parents rely on the District to appropriately curate its library collections." ECF No. 42. The District fails to acknowledge that courts often find that "it is always in the public interest to prevent the violation of a party's constitutional rights." *Free the Nipple-Fort Collins v. City of Fort Collins, Colorado*, 237 F. Supp. 3d 1126, 1134–35 (D. Colo. 2017), *aff'd*, 916 F.3d 792 (10th Cir. 2019) (quoting *Connection Distrib., Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998)); *Loc. Org. Comm., Denver Chapter, Million Man Mar. v. Cook*, 922 F. Supp. 1494, 1501 (D. Colo. 1996) ("[A]s far as

the public interest is concerned, it is axiomatic that the preservation of First Amendment rights serves everyone's best interest.").

The public interest factor weighs against a stay.

## IV. CONCLUSION

Because all four factors weigh against a stay pending appeal, the Court DENIES Defendant's motion. ECF No. 42. Pending a final trial on Plaintiffs' request for a permanent injunction or other resolution, the Court orders the District to return the Removed Books to their respective libraries by 5:00 p.m. on April 5, 2025, and the District is enjoined from any conduct that violates the Court's order on Plaintiffs' motion for preliminary injunction.

DATED this 3rd day of April 2025.

BY THE COURT:

_____
Charlotte N. Sweeney
United States District Judge